**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bryan Ritchie, | No. CV-04-1797-PHX-JAT |
| Plaintiff, | **FINDINGS OF FACT AND CONCLUSIONS OF LAW** |
| vs. | |
| Cox Enterprises Long Term Disability Plan; Aetna Life Insurance Company, | |
| Defendants. | |

Pending before this Court is a trial on the administrative record pursuant to *Kearney v. Standard Ins. Co.*, 175 F.3d 1084 (9th Cir. 1999). Both parties have stipulated that a trial of this action may be conducted on the trial briefs submitted by the parties and the administrative record. (Stipulation to Waive Pre-Trial Proceedings at 2). The Court has considered Plaintiff's Opening Trial Brief (Doc. # 20), Defendant's Responsive Trial Brief (Doc. # 22), Plaintiff's Reply to Defendant's Responsive Trial Brief (Doc. # 23), and the administrative record for the case (Doc. # 12). The Court now enters the following Findings of Fact and Conclusions of Law.

**Findings of Fact**

1. Pursuant to the terms of the applicable Cox Plan, to be eligible for disability benefits, a claimant must be totally disabled. Under the terms of the Cox Plan, a claimant is totally disabled if either of the following apply:

> In the first 24 months of a period of total disability[, y]ou are not able, solely because of injury or disease, to work at your own occupation [OR a]fter the first 24 months of a period of total disability[, y]ou are not able, solely because of an injury or disease, to work at any reasonable occupation.

(BR 0002).

2.   Plaintiff states that he is unable to work at his own occupation as a Field Service Representative with Cox Communications, due to physical disabilities, including abdominal pain and back pain, (BR 0071, 0190), and due to mental disabilities, including depression, agoraphobia, and panic attacks.  (BR 0071, 0073, 0170).  Plaintiff indicates that he stopped working with Cox on February 13, 2002 (BR 0188).  The administrative record contains a summary of Plaintiff's occupation.  (BR 0195-200).  Plaintiff states that his work entails the installation and service of cable.  (BR 0072).

3.   Dr. Williams' medical report, dated February 20, 2002, indicates subjective left groin pain.  On exam, there was tenderness over the left pubic tubercle, but no evidence of an inguinal hernia.  Dr. Williams opined that Plaintiff had adductor tendinitis.  (BR 0132).

4.   Dr. Bollimpalli evaluated Plaintiff on March 22, 2002 and assessed Plaintiff as having left lower quadrant pain, most likely myofascial in nature, with possible rectus muscle trigger points.  (BR 0126).

5.   A radiology report dated June 11, 2002, regarding an abdominal ultrasound, indicates no definite colon abnormalities, although there was early developing diverticular disease in the sigmoid area.  (BR 0116).

6.   A July 12, 2002, report by Beverly A. Collins, N.P.-C., indicates an impression of left lower quadrant abdominal pain.  Ms. Collins questioned whether the pain is of a gastrointestinal (GI) or intraabdominal source, or is a pulled ligament in the groin area.  (BR 0121-23).

7.   On August 16, 2002, Dr. Kumar evaluated Plaintiff and indicated that his symptoms may be GI, renal, or psychosomatic in nature, but no neurological workup was indicated.  (BR 0130-31).

8.   A radiology report dated August 30, 2002, regarding an abdominal CT scan, indicates no evidence of an abnormal soft tissue mass or intra-abdominal fluid collection. The scan showed diffuse fatty infiltration of the liver with focal sparing along the interlobar fissure just superior to the gallbladder fossa.  (BR 0120).

9.   A September 12, 2002, report by Dr. Kanner, regarding a flexible sigmoidoscopy, indicates an unremarkable examination with an impression of possible abdominal pain secondary to Irritable Bowel Syndrome.  (BR 0129).

10.   Plaintiff filed for long term disability benefits on October 1, 2002, claiming strong persistent pain in the lower left abdomen as the disabling condition.  (BR 0190).

11.   An October 14, 2002, report by Dr. Kanner notes left lower quadrant pain of uncertain etiology.  The report states that the pain was not clearly GI in origin.  (BR 0128).

12.   A radiology report dated October 25, 2002, regarding an intravenous pyelogram, indicats a normal excretory urogram.  (BR 0119).

13.   By letter dated January 31, 2003, Aetna requested that Plaintiff complete a Medical Authorization to Release Information and a Mental Health Provider's Statement. (BR 0189).   By letter dated March 3, 2003, Aetna requested that Plaintiff return the Authorization form within thirty days or the claim would be closed.  (BR 0173).  Plaintiff completed the Authorization form on May 6, 2003.  (BR 0152).

14.   A Mental Health Provider's Statement was completed by Dr. Pawar on February 28, 2003.  In that statement, Dr. Pawar writes that Plaintiff suffers from panic attacks and agoraphobia, and is markedly limited in each category on the statement.  Dr. Pawar notes that Plaintiff is compliant with his medications and shows some improvement, and describes a treatment plan of monthly therapy sessions and medication management.  (BR 0170-71). There are no other statements, reports, or notes in the record from Dr. Pawar or any other mental health provider.

15.   By letter dated March 7, 2003, Aetna requested that Plaintiff complete a supplemental statement.  (BR 0172).  Plaintiff completed the supplemental statement on May 6, 2003.  (BR 0150-51).

1   16.  Aetna sent letters to Dr. Allen on January 31 and March 2, 2003 requesting

2   additional information and a physical capacities evaluation. (BR 0161). It appears that these

3   letters were misaddressed by Aetna, and Dr. Allen did not receive them until May 6, 2003.

4   Dr. Allen responded to the letters on May 7, 2003, stating that Plaintiff had been off work

5   on disability because of lower abdominal pain, lower back pain, and depression.  In that

6   response, he states that the physical capacities evaluation requested by Aetna is in excess of

7   what would normally be conducted in a family physician's office.  (BR 0136).

8   17.  The administrative record contains Dr. Allen's reports and letters, dated March

9   31, May 6, May 7, and May 19, 2003.  (BR 0165, 0141, 0091, 0095).  Dr. Allen's progress

10  notes,  ranging from August 14, 2002 through June 25, 2003, indicate Plaintiff's symptoms

11  of lower abdominal and lower back pain, but do not indicate actual impairment.  There is no

12  indication from Dr. Allen's reports of a conclusive diagnosis.

13  18.  By letter dated May 15, 2003, Aetna denied Plaintiff's claim of long term

14  disability benefits. (BR 0144-47).  Aetna based its denial on the following information: (1)

15  Plaintiff's Long Term Disability Application (BR 0190); (2) Dr. Pawar's Mental Health

16  Provider Statement (BR 0170-71); (3) Dr. Allen's Physician's Statements (BR 0165, 0141);

17  (4) A job description from the employer, Cox Communications (BR 0195-200); and (5) a

18  review of the file by medical staff.  The letter stated that the claim was being denied because

19  there was not sufficient medical documentation, nor restrictions and limitations, which would

20  support Plaintiff's inability to work.  (BR 0145-46).  The letter stated that Plaintiff was

21  entitled to a review of Aetna's decision.  (BR 0146).

22  19. The administrative record shows that a nurse consultant reviewed Plaintiff's claim

23  on or about May 23, 2003.  Upon a review of the file, the nurse consultant opined that there

24  is not enough objective medical evidence to support disability.  (BR 0279-80).

25  20.  By letter dated June 25, 2003, Aetna upheld its previous denial of benefits to

26  Plaintiff.  (BR 0133-35).  Aetna based its denial on all of the information reviewed for the

27  May 15 denial, plus the letter from Dr. Allen dated May 7, 2003.  (BR 0133-34).  The letter

28  stated that the reason for the denial was that the medical documentation does not support

1   Plaintiff's inability to work.  (BR 0134).  The letter stated that Plaintiff was entitled to a

2   review of Aetna's decision.  *Id.*

3      21.  In its denial letters, Aetna identified the additional information, if available, that

4   would be necessary to support Plaintiff's claim for disability benefits.  (BR 0146, 0134).

5   Specifically, Aetna requested: (1) a detailed narrative report outlining in objective terms the

6   specific physical and/or mental limitations and restrictions inherent to Plaintiff's condition;

7   (2) any documents or information specific to the condition(s) for which Plaintiff is claiming

8   total disability, and which would assist in the evaluation of Plaintiff's disability status; or (3)

9   any other information or documentation that Plaintiff believed may assist Aetna in reviewing

10  the claim.  (BR 0146, 0134).

11     22.  On or about July 23, 2003, Plaintiff contacted Aetna by phone and was again told

12  by Aetna's claim analyst that there was not enough information in his file to support

13  Plaintiff's inability to return to work.  (BR 0261).  The claim analyst asked Plaintiff about

14  any psychiatric treatment he was receiving, and Plaintiff told the analyst to speak with his

15  attorney.  *Id.*  Plaintiff then ended the call.  *Id.*  Aetna's claim analyst indicated in his notes

16  that Plaintiff would not cooperate in regards to possible psychiatric treatment, and that

17  Plaintiff's claim would again be denied.  *Id.*

18     23.  By letter dated July 23, 2003, Aetna made a "final determination," upholding the

19  previous denial of Plaintiff's claim.  (BR 0092).  The letter states that Plaintiff was entitled

20  to another review this decision by submitting a written appeal.  *Id.*

21     24.  On August 5, 2003, Dr. Barranco, a neurosurgeon, examined Plaintiff for left

22  lower quadrant pain.  (BR 0082-85).  Dr. Barranco indicates in his report that he did not have

23  a neurologic explanation for Plaintiff's symptoms.  (BR 0084).  Dr. Barranco states that there

24  is nothing from the T11 to S1 area of Plaintiff's spine that would account for Plaintiff's

25  symptoms.  (BR 0085).

26     25.    By letter dated December 22, 2003, Plaintiff's counsel submitted an official

27  request for appeal.   (BR 0314).   Plaintiff's counsel requested that he be allowed to

28  supplement  any and all medical records of the Plaintiff.  *Id.*

1    26. By letter dated February 6, 2004, Aetna informed Plaintiff's counsel that they had

2    not received any additional information. (BR 0324). The letter further states that, because

3    Aetna was giving Plaintiff's counsel additional time to submit clinical information, the

4    decision date would be extended by forty-five days. *Id.*

5    27. By letter dated February 17, 2004, Plaintiff's counsel informed Aetna that no

6    additional medical records would be forthcoming. (BR 0315-17). Plaintiff's counsel stated

7    that a second decision could take place without updated medical information. (BR 0315).

8    28. Aetna's Medical Director, Dr. Hopkins, reviewed Plaintiff's administrative file

9    and prepared a report dated February 26, 2004. (BR 0321-22). Dr. Hopkins reviewed

10   Plaintiff's medical records from Drs. Williams, Bollimpalli, Allen, Kumar, Kanner, and

11   Barranco. *Id.* Dr. Hopkins summarized Plaintiff's symptoms and treatment in her report, and

12   concluded that no actual functional impairment was objectively documented. *Id.* Dr.

13   Hopkins stated that Plaintiff's symptoms "appear to be markedly out of proportion to the

14   exam findings and diagnostic testing." *Id.* Dr. Hopkins further concluded that nothing

15   objectively documented in Plaintiff's medical records would preclude Plaintiff from

16   returning to work full-time with no restrictions as of February 13, 2002. *Id.*

17   29. By letter dated March 22, 2004, Aetna upheld its original denial and closed

18   Plaintiff's file. (BR 0319-20). In that letter, Aetna summarized the review process and

19   stated that the clinical evidence failed to support Plaintiff's claim of total disability. *Id.*

20   30. On August 27, 2004, Plaintiff filed a Complaint with this Court, contending that

21   Aetna has wrongfully denied benefits to the Plaintiff, and breached its duty of good faith and

22   fair dealing. (Doc. # 1).

23                              **Conclusions of Law**

24   *Preemption of Plaintiff's State Law Claims*

25   31. A state law claim for breach of the implied covenant of good faith and fair dealing

26   in an insurance contract is preempted by ERISA. *See, e.g.*, *Pilot Life Ins. Co. v. Dedeaux*,

27   481 U.S. 41, 50-51 (1987); *Bast v. Prudential Ins. Co. of Am.*, 150 F.3d 1003, 1007-08 (9th

28   Cir. 1998). ERISA's civil enforcement provisions are the exclusive vehicle for actions by

1   plan beneficiaries claiming improper handling of their claims. *Crull v. GEM Ins. Co.*, 58

2   F.3d 1386, 1390-91 (9th Cir. 1995) (*citing Dedeaux*, 481 U.S. at 52).

3       32. Plaintiff's claims for breach of the implied covenant of good faith and fair dealing

4   are preempted by ERISA, and are therefore dismissed.

5   *Standard of Review*

6       33. A denial of benefits is reviewed under a *de novo* standard unless the plan

7   administrator has discretionary authority to determine eligibility or interpret the terms of the

8   plan. *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1089 (9th Cir. 1999) (*citing Firestone*

9   *Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). Where discretion is conferred upon

10  the plan administrator, the appropriate standard of review is abuse of discretion. *Firestone*,

11  489 U.S. at 111.

12      34. Under the plan administration agreement between Aetna and Cox

13  Communications, Aetna is unambiguously given discretion to determine eligibility and

14  interpret the terms of the plan. (BR 0043). Therefore, the appropriate standard of review in

15  this case is abuse of discretion.

16      35. Under an abuse of discretion standard, a reviewing court may only set aside an

17  administrator's discretionary decision when it is arbitrary and capricious. *Jordan v. Northrop*

18  *Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 875 (9th Cir. 2003). An abuse of

19  discretion by an ERISA administrator occurs only if it "(1) renders a decision without

20  explanation, (2) construes provisions of the plan in a way that conflicts with the plain

21  language of the plan, or (3) relies on clearly erroneous findings of fact." *Boyd v. Bert*

22  *Bell/Pete Rozelle NFL Players Ret. Plan*, 410 F.3d 1173, 1178 (9th Cir. 2005). "In the

23  ERISA context, even decisions directly contrary to evidence in the record do not necessarily

24  amount to an abuse of discretion." *Id.*

25  *Review of Aetna's Denial of Benefits Under the Abuse of Discretion Standard*

26      36. In the denial letters sent to the Plaintiff, Aetna provided an explanation of the

27  reasons for the denial, and invited the Plaintiff to provide additional documentation for Aetna

28  to consider. (BR 0144-47, 0133-35).

1    37.  There is no evidence in the record to indicate that Aetna interpreted any provision

2  of the plan in a way that conflicted with the plan's plain language.

3    38.  Aetna determined that there was insufficient evidence in the administrative record

4  to support disabling psychiatric illness.  Dr. Pawar provided a mental health provider's

5  statement asserting that Plaintiff was markedly limited in his abilities (BR 0170-71), but no

6  progress notes or any other psychiatric medical records are in the administrative record.  Dr.

7  Pawar's *ipse dixit* lacks any supporting evidence, and Aetna was within its discretion to

8  reject Dr. Pawar's conclusions.  *See Jordan*, 370 F.3d at 878-79.

9    39.  Plaintiff's claim is based primarily on symptoms, and not on evidence of actual

10  impairment. At no point did Aetna deny that Plaintiff was having these symptoms, rather

11  Aetna determined that Plaintiff's medical records failed to establish that he was unable to

12  work.  The existence of pain is not sufficient to establish disability; the pain must be such

13  that it disables Plaintiff from working at his job. *See id.* at 877.

14    40.  Plaintiff's physician Dr. Allen concluded that Plaintiff was disabled, and Aetna's

15  medical director Dr. Hopkins reached the opposite conclusion.  Where a plan administrator

16  is presented with conflicting medical evidence, it is not an abuse of discretion to adopt the

17  reasonable opinions of one doctor over another.  *See Boyd*, 410 F.3d at 1179-80; *Jordan*, 370

18  F.3d at 877-78.

19    41.  Aetna provided Plaintiff with a reasonable basis for its denial, and informed

20  Plaintiff of what additional evidence would be required to establish disability.  Aetna

21  reasonably concluded that Plaintiff failed to provide adequate evidence of disability.

22    42.  A denial of benefits is not arbitrary or capricious where it is "grounded on *any*

23  reasonable basis." *Jordan*, 370 F.3d at 875 (emphasis in original) (internal citation omitted).

24  Therefore, the Court finds that Aetna's denial was not arbitrary or capricious, and was not

25  an abuse of discretion.  The Court finds that Defendants are entitled to judgment in this

26  matter.

27  Accordingly,

28    The decision of the plan administrator is **AFFIRMED**.

1    **IT IS ORDERED** that the Clerk of the Court shall enter judgement in favor of

2    Defendants.

3    DATED this 27th day of March, 2006.

4

5

6    _____
     James A. Teilborg
7    United States District Judge

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28